Per Curiam.

The chief complaint of the defendant involves the admission of testimony of several witnesses concerning like acts and also the charge of the trial court relative thereto.
In his brief the defendant quotes several excerpts which he claims illustrate the incompetency of the evidence to which he objects.
The following occurred during the examination of a witness named Charles Dixon:
“Q. Mr. Dixon, around July ’58 or prior thereto, had you rec.eived any other complaints from people other than the police department concerning Dave Shively? A. Yes, I have.
“Mr. Monger: Objection. At this time I ask the court to declare a mistrial — highly improper.
“By the Court: Overruled.”
*129 The following testimony was given by Police Chief Elba Eoss:
“Q. Had your department reason to believe prior to his statement there had been some association?
“Mr. Butler: Objection, Your Honor.
“Q. Between Jimmie Graham and the defendant, Dave Shively?
“Mr. Butler: Eenew the objection, Your Honor.
“By the Court: Grounds, please?
“Mr. Butler: The record of the department would speak for itself. Produce that, fine.
“By the Court: Objection overruled. You may answer.
A. Yes sir, we had.
“Q. Chief Eoss, prior to the time Jimmie Graham was fin your station on February the 21st, tell us whether or not there had been any investigation going on concerning the defendant and Jimmie Graham, or the defendant and other boys?
“Mr. Butler: Now—
“By the Court: Come to the bench, please.
“(Counsel to bench.)
“By the Court: I am going to overrule your objection. You may answer. A. There had.”
However, not all such evidence proffered by the prosecution was admitted. One witness, Eonald Vance, told of a visit to the defendant’s home with a soldier friend who had tried to borrow money from the witness. The soldier friend and the defendant went into another room in the defendant’s house where it sounded as if they sat down on a bed. Later when the witness and the soldier friend left the house the latter had four dollars. The following colloquy occurred concerning this evidence:
“Mr. Monger: Object on all of it, Your Honor, — over two years ago; think there’s a precedent for that.
“By the Court: Yes. The question to which the objection is related, however, — I will sustain the objection.”
However, one witness, Eeverend Thomas Gibboney, pastor of the defendant’s church, was called by both the prosecution and the defense. He testified in part as follows:
“Q. * * * I will ask at this time if at any time during your conversations or correspondence, or your meetings with the de *130 fendant, Dave Shively, he ever admitted to you not only concerning Jimmie Graham, but any other persons, that he had tendencies toward homosexuality? A. I am willing to answer that question if it is correct — what was stated by the defense that this—
“By the Court: You may answer. A. Dave admitted to me that some ten years before he had a problem of that nature; we did not go into the nature of it, but at least he had a thought in that direction; but in a subsequent conversation he said he had mastered it — it hadn’t bothered him. At no time did he ever tell me he had had that tendency toward Jimmie Graham, but we did discuss it as a pastor and his church pastor. £ £ ^
“Q. In other words, in a written communication of some kind did he state at one time he had tousled the boy’s hair. Also ask if in that written communication — communique—or oral statement — he admitted he run his cold hand down the boy’s back, but nothing else? Did he make that statement to you? A. Yes, in the same letter he did.”
The statute here involved is Section 2945.59, Revised Code, as amended effective October 1,1953, reading as follows:
“In any criminal case in which the defendant’s motive or intent, the absence of mistake or accident on his part, or the defendant’s scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant’s scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.”
Previously, as Section 13444-19, General Code, the language employed was “any like acts or other acts.” As above quoted, the present wording is “any acts of the defendant.”
In his charge to the jury the judge said in part:
“There has also been evidence admitted in this case by the court of prior, unusual or immoral acts, or strange conduct of the defendant, as well as alleged unusual circumstances occurring near his home. There has also been considerable evidence *131 as to acts of the defendant on times other than those mentioned in the indictment. Now this evidence, for instance, of the acts on a trip taken in the middle of October, these acts do not and cannot directly prove the defendant guilty of the acts alleged on January the 3rd or February the 7th; this evidence was allowed for whatever effect you determine it might have on the alleged moral disposition and perversity of the defendant, it being a theory of the law that a person who has indulged in similar conduct at other times to that alleged in the indictment is more likely to have that type of moral disposition to commit the act alleged than one who has not indulged in such acts. ’ ’
In its opinion the Court of Appeals commented:
“An examination of the court’s charge, as above quoted, shows that the jury was instructed to consider such evidence only in determining the ‘alleged moral disposition and perversity of the defendant.’ The court plainly instructed the jury that, ‘these acts do not and cannot clearly prove the defendant guilty of the acts alleged on January the 3rd and February the 7th (the dates of the specific crimes alleged in the indictment).
“It is urged by the defendant that the court committed prejudicial error in its charge by referring to ‘prior unusual and immoral acts or strange conduct of the defendant, as well as unusual circumstances occurring near his home.’ This language could well have been omitted because it is immediately followed by this statement:
“ ‘There has also been considerable evidence as to acts of the defendant on times other than those mentioned in the indictment. ’
“The language complained of is mere repetition and surplusage. Its use was unfortunate. The test is whether or not the jury was thereby probably misled or the rights of the defendant prejudiced. After a careful study of the entire charge on this subject, we are unable to agree with defendant’s contention. We do not see how the jury could have been misled and the rights of the defendant prejudiced, after considering the charge as a whole.
# # As heretofore stated, the complaining witness, James Graham, a boy 16 years of age, testified, in detail, concerning the commission of the crime. It would serve no useful purpose *132 to recite any of Ms testimony. It is sufficient to say that Ms testimony was positive in describing the acts and, if believed by the jury, would carry great weight. Obviously, by their verdict, the jury did believe this witness and did not believe the demal of Ms statements by the defendant. It was entirely witMn the province of the jury to determine the credibility of the witnesses and the weight and value to be given to their testimony.”
Those views are shared by a majority of the members of this court, and the judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, O. J., Zimmerman, Matthias and O’Neill, JJ., concur.
Taet and Herbert, JJ., dissent.